THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| DARYL PETERSON, | ) | Case No. 2:07CV00054DS |
|        Plaintiff, | ) | |
|   vs. | ) | MEMORANDUM DECISION AND ORDER |
| LUNA BRONZE, L.C., | ) | |
|        Defendant. | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff Daryl Peterson, an artist and sculptor, is in a dispute with Defendant Luna Bronze L.C. over the copyright ownership of certain sculptures as well as other issues. In 2005, Lee Hindin the CEO of DuVal Development, LLC ("DuVal"), a real estate development company in Summit County, Utah, began negotiating with Luna Bronze and its principals over the creation of elk sculptures to be displayed at Les Chateaux DuVal, a DuVal development. Peterson and Luna Bronze, who both claim copyright ownership interests in the elk sculptures, parted ways in May of 2006, by which time two elk sculptures had been produced. In June 2006, Luna Bronze delivered six small elk bronze sculptures to DuVal.

On or about September 19, 2006, Peterson's attorney sent a "cease and desist" letter (the "Letter") to Luna Bronze based on alleged copyright infringement. *See* Mem. Supp. Ex. A. A copy

of that Letter was sent to DuVal.  Based on the allegations contained in the letter, DuVal ended its contractual relationship with Luna Bronze.

Peterson has moved the Court for summary judgment on Luna Bronze's Fourth Claim of its Counterclaim asserting Intentional Interference with Prospective Economic Relations (Doc. #33).

## II.   SUMMARY JUDGEMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1]  *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  This burden has two distinct components:  an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party.  *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1] Whether a fact is material is determined by looking to relevant substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

252 (1986).  If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Id.*  In considering a motion for summary judgment, the record must be viewed in a light most favorable to the non-moving party.  Celotex, 477 U.S. at 322.

### III.  DISCUSSION

To recover on its claim of intentional interference with prospective economic relations, Luna Bronze must establish "(1)that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2)for an improper purpose or by improper means, (3)causing injury to the plaintiff."  *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982).

#### A. Improper Purpose or Improper Means

Peterson first assets that he is entitled to summary judgement because he did not interfere by improper means or for an improper purpose because he "sent the demand letter to Luna Bronze and DuVal in order to protect his copyrights and to prevent DuVal from acquiring possible forgeries or infringing works."  Mem. Supp. pp. 5-6.  Thus he concludes that the evidence fails to establish that his "actions violated any law or regulation, or how his purpose was to injure Luna Bronze."  Id. p. 5.

To establish improper means, a plaintiff must show that

"'the defendant's means of interference were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession.'" *Anderson Development Co. v. Tobias*, 116, P.3d 323, 331 (Utah 2005)( citations omitted). "'Commonly included among improper means are violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.'" *Isom*, 657 P.2d at 308 (citation omitted). As evidence of improper means, Luna Bronze claims the Letter contained misrepresentations about ownership of the elk sculptures as well as threats and intimidation regarding criminal prosecution and litigation. The Court concludes that a reasonable jury could find from the evidence cited by Luna Bronze that the means used was improper. Thus, the evidence presents sufficient disagreement to require submission to a jury.

As evidence of improper purpose, Luna Bronze cites the testimony of its employee, Jackie, that Peterson told him that the copyright dispute over the elk sculptures would cost the owner of Luna Bronze to lose the business to Peterson and to be deported. To establish improper purpose "the plaintiff must show that the defendant's 'predominant purpose was to injure the plaintiff.'" *Anderson Development Co.*, 116 P.3d at 331 (citation omitted). The Court is of the view that a reasonable jury could conclude from the evidence cited by Luna Bronze that Peterson's purpose was improper. The evidence, thus, presents sufficient

disagreement to require submission to a jury.

## B. Judicial Proceedings Privilege

Peterson next asserts that he is entitled to summary judgment under the judicial proceedings privilege as set forth in *Bower v. Stein Eriksen Lodge Owners Ass'n, Inc.*, 201 F. Supp. 2d 1134, 1138 (D. Utah 2002)("judicial proceeding privilege recognizes that statements of attorneys, parties, judges, witnesses, and other participants in the judicial process enjoy an absolute privilege against liability for torts if the statements are made during or preliminary to a judicial proceeding").

*Bower*, however, recognized that publication to a non-party destroys the privilege unless the non-party has a direct financial interest in the case. Id. Peterson contends that "DuVal has a direct financial interest in the outcome of this proceeding; specifically, the fact that it purchased infringing works including the four bronze sculptures that were cast subsequent to Peterson leaving Luna Bronze." Mem. Supp. p. 7. Peterson further claims that DuVal "was financially interested in avoiding the costs associated with litigation and the liability that may result from purchasing infringing works." Reply p. 5.

Without more, the Court is not persuaded that Peterson has met its burden of proof on this issue. Copyright ownership of the subject works is in dispute. And, Peterson has simply not established, beyond speculation, that DuVal has any interest in

this proceeding, let alone "a direct financial interest".

### C. Justification

Peterson next asserts that he is entitled to summary judgment on the Luna Bronze's interference claim because his interaction with DuVal was justified. *See Coronado Mining Corp. v. Marathon Oil Co.*, 577 P.2d 957, 960 (Utah 1978)("exercise of a legal right constitutes justification and is a complete defense to an action of tortious intervention of contractual rights"). *See also*, LeFevre *v. Space Communications Co. (Spacecom)*, 771 F.2d 421, 423 (10th Cir. 1985)(citing New Mexico law)("[d]efendant's action in interfering with plaintiff's contract was privileged if it was a good faith assertion to protect a legally protected interest of its own which it believed might otherwise be impaired or destroyed by the performance of the contract"). Peterson claims that he was "clearly justified" and that he "acted in good faith to protect his copyrights in the bronze sculptures he believed Luna Bronze had infringed." Mem. Supp. p. 8.

There is evidence of record, however, from which a reasonable jury could conclude that Peterson was not acting in good faith to protect a legal interest which he believed might be impaired. Luna Bronze points to Peterson's conversation with its employee Jackie that because of the alleged copyright violation Tom Martin, a principal of Luna, would lose ownership, be deported and that there was a good chance that Peterson would end

up owning Luna Bronze.  Moreover, the issue of Peterson's legal rights, specifically copyright ownership in the subject art work, is the disputed issue at the heart of this matter.  The evidence, thus, presents sufficient disagreement to require submission to a jury.

### D. Party to the Economic Relationship

Finally, Peterson's contends that he is entitled to summary judgment because he was a party to the economic relationship between Luna Bronze and DuVal.  *See Isom*, 657 P.2d at 293 ("one party to a contract cannot be liable for the tort of interference with contract for inducing a breach by himself or the other contracting party").

Luna Bronze disputes that Peterson was a party to its contract with DuVal and the Court is satisfied that the fact is sufficiently in dispute to preclude the granting of summary judgment.  *See* Lee Hindin Aff. ¶3 (denying any business relationship with Peterson).

### IV. CONCLUSION

For the reasons stated, Peterson's  Motion for Partial Summary Judgment (Doc. # 33) is denied.

DATED this 13th day of August, 2008.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT